# In the United States Court of Federal Claims

No. 16-296C
(Originally Filed: April 13, 2016)
(Re-issued: April 21, 2016)[1]

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REO SOLUTION, LLC,

                *Plaintiff*,

v.

THE UNITED STATES,

                *Defendant*,

and

SAGE ACQUISITIONS, LLC,

                *Intervenor*.

Post-Award Bid Protest; Motion to Dismiss; Subject Matter Jurisdiction; Standing; Substantial Chance.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*David Samuel Cohen*, Washington, DC, for plaintiff.

*Daniel B. Volk*, United States Department of Justice–Civil Division, Commercial Litigation Branch, Washington, DC, with whom was *Benjamin C. Mizer*, Principal Deputy Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Douglas K. Mickle*, Assistant Director, for defendant. *Jonathan E. English*, *William R. Taylor*, and *Julie K. Cannatti*, U.S. Department of Housing and Urban Development, of counsel.

*Richard W. Oehler* Seattle, WA, with whom was *W. Hartmann Young*, Washington, DC, for intervenor.

---

[1]This opinion was originally filed under seal, and the parties were afforded an opportunity to propose redactions of protected information. Those redactions are indicated in brackets below.

<u>OPINION</u>

BRUGGINK, Judge

This is a post-award bid protest. Plaintiff, REO Solution, LLC ("REO") alleges that the award of a contract by the United States Department of Housing and Urban Development ("HUD") under Solicitation No. DU204SA-13-R-0005 ("Solicitation") to Sage Acquisitions, LLC ("Sage") was arbitrary and capricious and in violation of FAR § 15.306. REO seeks a preliminary injunction to enjoin HUD from awarding Sage the contract and asks the court to direct HUD to reopen discussions. Before the court is defendant's motion to dismiss for lack of jurisdiction. Oral argument was held on March 30, 2016. For the reasons set forth below, the court grants defendant's motion.

BACKGROUND

The Federal Housing Administration ("FHA") is a unit of HUD and administers a single-family mortgage insurance program, insuring approved lenders against the risk of loss on loans financed under its program. Administrative Record ("AR") 77. When a homeowner defaults on an FHA-insured loan, the lender acquires title to the property by foreclosure, files a claim for insurance benefits, and conveys the property to HUD. *Id.* Accordingly, HUD has a need to manage and sell a sizable inventory of single family homes. *Id.*

On July 25, 2014, HUD issued Solicitation No. DU204SA-13-R005 seeking marketing and sales services for HUD-owned properties in twelve different geographic regions. AR 65, 79. Of those twelve regions, nine were set aside for small businesses. *Id.* HUD intended to award one indefinite delivery/indefinite quantity contract for each area, with bidders able to bid on more than one area in their proposals. AR 79. The area at issue in the instant case, designated "1P," covered the state of Michigan, and was one of the areas set aside for small businesses. AR 68.

The solicitation provided that proposals would first be evaluated on a pass/fail basis, with the proposals that passed being rated as technically acceptable. AR 237. For area 1P, HUD received twenty-four total proposals, nine of which were found to be technically acceptable. AR 2901. From there, HUD would select the proposal which represented the best value to the agency, with "approximately equal" weight given to two factors: price and past/present

performance. AR 237. With respect to past/present performance, HUD would assign each bidder a rating corresponding to the agency's confidence that an offeror would be able to successfully accomplish the required tasks. AR 240. Five ratings were possible: Excellent/High Confidence, Good/Significant Confidence, Fair/Some Confidence, No Confidence, and Neutral/Unknown Confidence. AR 244.

The following table summarizes the nine proposals rated as technically acceptable, ordered from lowest proposed price to highest:

| Company | Total Value of Contract | Technically Acceptable | Confidence Rating |
|---|---|---|---|
| IEI-Cityside JV | $40,759,612.06 | Y | Excellent/High Confidence |
| [          ] | [          ] | Y | Neutral/Unknown Confidence |
| Sage Acquisitions, LLC | $43,402,099.30 | Y | Excellent/High Confidence |
| [          ] | [          ] | Y | Fair/Some Confidence |
| [          ] | [          ] | Y | Fair/Some |
| [          ] | [          ] | Y | Neutral/Unknown Confidence |
| [          ] | [          ] | Y | Neutral/Unknown Confidence |
| [          ] | [          ] | Y | Neutral/Unknown Confidence |
| REO Solution, LLC | $51,970,865.42 | Y | Fair/Some Confidence |

3

AR 2901. HUD awarded the contract for area 1P to IEI-Cityside, JV ("IEI"). AR 2903. HUD determined that the two potential candidates for award were IEI and Sage, and given that each offeror had the same confidence rating, "no additional trade-off was considered" and the award was made to the offeror with the lowest total price. AR 2902. Subsequently, REO filed a size protest with the Small Business Administration ("SBA") and concurrently protested the award to the Government Accountability Office ("GAO"), asserting that HUD conducted unreasonable discussions, unreasonably evaluated REO's past performance, and failed to adequately apprise offerors as to how it intended to evaluate offerors' past performance. AR 2975, 2927. On November 10, 2015, SBA determined that IEI did not meet the applicable size standard. AR 2981. Accordingly, HUD announced that it would terminate its contract with IEI and make a new award for area 1P. GAO subsequently dismissed REO's protest as moot. Am. Compl. ¶ 13.

On February 24, 2016, HUD notified REO that another award had been made for area 1P, this time to Sage. REO filed the instant bid protest on March 4, 2016. The administrative record was filed on March 17, 2016, and plaintiff filed its amended complaint on March 24, 2016. The matter is now ripe for disposition.

DISCUSSION

Defendant argues that plaintiff's complaint must be dismissed because plaintiff lacks standing. Specifically, defendant asserts that plaintiff cannot show that it stood a substantial chance of receiving the award because not only was REO's confidence rating lower than that of Sage (and equal to that of two other prospective bidders), but REO's proposed price was the highest of any technically acceptable offeror by several million dollars. Plaintiff, on the other hand, argues that it does stand a substantial chance of receiving the award because the agency's evaluation of both REO's and Sage's past performance references was arbitrary and capricious.[2]

---

[2]Plaintiff's Response and Reply contains two additional arguments. First, plaintiff argues that HUD violated FAR §15.503 by failing to provide a pre-award notice to each unsuccessful offeror identifying the apparent successful offeror prior to making award. However, HUD determined that notice was not required, in accordance with FAR § 15.503(a)(2)(III) ("The notice is not required when the contracting officer determines in writing that the urgency
(continued...)

A plaintiff bears the burden of establishing the court's subject matter jurisdiction by a preponderance of the evidence. *See Brandt v. United States*, 710 F.3d 1369, 1373 (Fed. Cir. 2013). The Tucker Act provides that the Court of Federal Claims:

> shall have jurisdiction to render judgment on any action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award of the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement.

28 U.S.C. § 1491(b)(1). To establish jurisdiction under this statute, a plaintiff must demonstrate that it is an "interested party." This "imposes more stringent requirements than Article III." *Weeks Marine, Inc. v. United States*, 575 F.3d 1252, 1359 (Fed. Cir. 2009). Although the term "interested party" is not defined within the statute, courts have construed it to consist of two elements: first, plaintiff must establish that it "is an actual or prospective bidder" and second, that it "possess[es] the requisite direct economic interest." *Id.* (citing *Rex Serv. Corp. v. United States*, 448 F.3d 1305, 1308 (Fed. Cir. 2006)).

Plaintiff obviously satisfies the first requirement - plaintiff is an actual

---

[2](...continued)
of the requirement necessitates award without delay . . . ."). AR 3685-86. Because the contracting officer made this determination in accordance with FAR § 15.503, plaintiff's argument lacks merit. Second, plaintiff argues that HUD violated 13 CFR § 121.1009(g)(2) by awarding a contract to a concern which has been found to be other than small. At the time plaintiff filed its response and amended its complaint, plaintiff had a size protest outstanding with SBA, challenging Sage as other than small. AR 3734. Additionally, on March 8, 2016, in response to a size protest made against Sage by another offeror for a different area under the instant solicitation, SBA determined Sage to be other than small. AR 3794. However, on March 28, 2016, SBA rescinded that size determination and found that Sage was an eligible small business concern. AR 3807. Subsequently, on March 30, 2016, SBA dismissed REO's size protest against Sage. AR 3810. Although REO is free to challenge this dismissal, at this time the court must conclude that Sage is a small business concern eligible for award, and that HUD did not violate 13 CFR § 121.1009(g)(2) when it awarded the contract to Sage.

bidder. In order to demonstrate sufficient economic interest, however, a plaintiff "must show that there was a 'substantial chance' it would have received the contract award but for the alleged error in the procurement process." *Info. Tech. & Applications Corp. v. United States*, 316 F.3d 1312, 1319 (Fed. Cir. 2003). Although a plaintiff need not show that it was next in line for the award but for the alleged error, demonstrating prejudice requires the plaintiff to show "more than a bare possibility" of receiving the award. *Precision Asset Mgmt. Corp. v. United States*, 125 Fed. Cl. 228, 233 (2016). The court concludes that plaintiff has failed to show that it had a substantial chance of receiving the award but for the alleged error.

Plaintiff argues that, but for the arbitrary and unreasonable rating of its past performance references, it would have received a past performance rating of Excellent/High Confidence, the highest rating, Resp. at 4, or that, in the alternative, an equal evaluation would have resulted in downgrading Sage's score to Fair/Some Confidence, the same as REO's current rating. *Id.* at 6. The crux of plaintiff's argument is that the agency acted arbitrarily and capriciously when it gave REO a fair confidence rating for exclusively using subcontractor references while not similarly docking Sage for also exclusively listing subcontractor references.

Recognizing that merely having the same past performance adjectival rating does not advance its cause, plaintiff further argues that, even if REO and Sage were to have the same adjectival rating, REO's past performance would have been found superior to Sage's because Sage's past performance references "provided 'mostly "Good" ratings'" while REO's subcontractor, BLB, received mostly "Excellent" ratings with only three ratings of "Good" and that BLB, as the incumbent contractor for area 1P, had more relevant past performance than Sage's mentor. *Id.* at 5. Finally, plaintiff argues that because its past performance should have been found superior to Sage's, the agency would have had to perform a value trade-off, and that REO stood a significant chance in overcoming the monetary difference because "the record demonstrates that the agency was willing to spend at least a 10% price premium for past performance proposals it deemed superior." *Id.* at 6.

Plaintiff has to fashion this multi-tiered decision tree because persuading the court of any one, or perhaps even two of these "should have beens" is insufficient. It would be insufficient, for example, merely to upgrade REO's adjectival score, as plaintiff suggests is appropriate. Then REO and Sage would have the same adjectival ranking but the substantial price differential would remain. Accepting as true plaintiff's contention that REO

and Sage were deserving of the same adjectival rating of Excellent/High Confidence, it is far from clear that the agency would have concluded that REO's past performance was actually superior. The solicitation contemplates a single adjectival rating and makes no reference to weighting within those general classifications. Plaintiff's suggestion that the court should take on the role of slicing the ratings thinner than the agency has done would put the court in an inappropriate role.

The same would be true if Sage were downgraded. Assuming, *arguendo*, that Sage's past performance rating was reduced to Fair/Some Confidence, that would tie Sage with not only REO, but with two other offerors, each of whom offered a price lower than REO (but higher than Sage). AR 2901. Indeed, the fact remains that REO's price was substantially higher than not only Sage's, but several other offerors. REO's bid of $51,970,865.42 is approximately 20% higher than both Sage's and the next lowest offeror's, [                          ]. *Id.* The solicitation provided that price and past performance were to be weighted approximately equal to each other, with those factors being the only ones considered when making the award. It is then reasonable to infer that the agency considered total price very important to the overall proposal. Only if both ratings were changed by the court - i.e., if Sage were downgraded and REO were upgraded - would plaintiff's argument have any traction. That circumstance could never occur however, because the argument that Sage should have been lowered assumes that the agency's weighting of past performance based on subcontractor references was correct - i.e., REO would remain merely "fair."

Plaintiff further argues that by downgrading REO's confidence rating for use of subcontractor references, the agency "disregarded the recency and relevancy of the ratings," thereby deviating from the announced evaluation criteria. *Id.* ¶ 47-48. Plaintiff also contends that the agency made use of a ceiling or fixed weighting for use of subcontractor references that was never announced. *Id.* ¶ 57-59. Plaintiff's arguments must fail. During questions and answers on the solicitation, the agency explicitly noted that while "no set weighting or number of submissions is assigned to subcontractor versus prime performance . . . the Government may adjust the overall confidence assessment upward or downward depending on the relevancy of the submissions, as well as the percentage of relevant work performed by the prime versus subcontractors." AR 899. Clearly, the agency intended to take many factors into account when assigning a confidence rating to a proposal. There is simply no evidence in the record to show the agency made use of a set weighting

when evaluating proposals.

The fact that REO's proposal was assigned a lower confidence rating than Sage's serves to illustrate that point. As previously mentioned, plaintiff believes it was penalized for only providing subcontractor references while Sage also provided exclusively subcontractor references and received a higher rating. REO's proposal is structured such that REO, a small business concern, would complete 51% of the work while utilizing its subcontractor for the remaining 49% of the work. Sage, on the other hand, is a mentor/protégé joint venture between a small business (Raine & Company) and a large business (PEMCO). As such, Raine is only required to be able to complete at least 40% of the contract work while being able to utilize its mentor for up to 60% of the work. It would be rational for the agency to view the two situations as different, and place greater value on Sage's reliance on a mentor who could perform up to 60% of the work.

Next, plaintiff contends that the agency violated FAR § 15.306 because during discussions, the agency "did not address areas of REO's proposal that the agency deemed to be a significant weakness or adverse past performance information," namely that it would have its confidence score downgraded due to the exclusive use of subcontractors as past performance references. Am. Compl. ¶ 41.

48 CFR § 15.305(d)(3) (aka FAR § 15.306) provides the following:

At a minimum, the contracting officer must, subject to paragraphs (d)(5) and (e) of this section and 15.307(a), indicate to, or discuss with, each offeror still being considered for award, deficiencies, significant weaknesses, and adverse past performance information to which the offeror has not yet had an opportunity to respond. The contracting officer also is encouraged to discuss other aspects of the offeror's proposal that could, in the opinion of the contracting officer, be altered or explained to enhance materially the proposal's potential for award. However, the contracting officer is not required to discuss every area where the proposal could be improved. The scope and extent of discussions are a matter of contracting officer judgment.

The solicitation defined adverse past/present performance as "Past/Present

Performance information that supports a less than satisfactory rating on any evaluation element or any unfavorable comments received from sources without a formal rating system." AR 244. This court has held, however, that "agencies are not obligated to conduct all-encompassing discussions, that is, to address in express detail all inferior or inadequate aspects of a proposal." *Labat-Anderson, Inc. v. United States*, 42 Fed. Cl. 806, 835 (1999) (quoting *CACI Field Servs., Inc. v. United States*, 13 Cl. Ct. 718, 731 (1987)).

When reviewing REO and its subcontractor, HUD did not receive any unfavorable comments or other information supporting a less than satisfactory rating for either. AR 2590-95. The fact that the agency ultimately gave REO a confidence rating of Fair/Some Confidence does not, however, rise to the level of a deficiency or significant weakness as contemplated by 48 CFR § 15.305(d)(3). Certainly there was no adverse past performance noted, as REO had no past performance to speak of and its subcontractor received high marks. Rather, plaintiff's challenge of the confidence rating it received amounts to nothing more than mere disagreement with the agency. There is nothing on the record to indicate that the agency considered a confidence rating of Fair/Some Confidence to be fatal to a potential offer. Accordingly, assignment of such a score cannot amount to a deficiency or serious weakness under the regulation. The shortcoming in plaintiff's proposal lay not in the quality of its subcontractors, but the way in which it chose to package its work.

Finally, plaintiff argues that, had the agency conducted reasonable discussions, REO would have known that its past performance ratings were lower than anticipated and may have lowered its price to bring it closer to Sage and the rest of the field. As defendant notes, however, HUD did notify REO during discussions that its price was the highest among all the technically acceptable offers. AR 2394. Once all bids were submitted, REO was still the most expensive offeror. It is simply too speculative to say that REO might have lowered its price, and if it had, would have lowered it to an amount more competitive with Sage.

In sum, the court cannot conclude that the plaintiff stood a substantial chance of award absent HUD's alleged errors. The sheer number of "but for" scenarios stretches plaintiff's argument to the breaking point. Simply put, the court does not believe that REO, with an offer over $8 million higher than that of Sage, stood a substantial chance of receiving the award, even given an equivalent adjectival rating to Sage, whether REO's rating was adjusted upward or Sage's rating was adjusted downward. Thus, even if the agency

erred in their past performance ratings of the offerors, there could have been no prejudice to REO.

CONCLUSION

For the reasons set forth above, the court finds that plaintiff does not have standing to bring its claim against defendant. Accordingly, the court grants defendant's motion to dismiss. The clerk shall enter judgment for defendant. No costs.

s/Eric G. Bruggink
Eric G. Bruggink
Judge